# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### NORTHERN DIVISION

**EDWARD C. HUGLER**,
Acting Secretary of Labor,
United States Department of Labor,                    Civil Action No. 1:16-cv-11552-TLL-PTM

       Plaintiff,                    Hon. Thomas L. Ludington

   v.

**TIMBERLINE SOUTH LLC**, a Michigan
Limited liability company, and
**JIM PAYNE**, an individual,

       Defendants.
_____/

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

     Defendants Timberline South, LLC ("Timberline") and Jim Payne ("Payne"), respectfully

move this Honorable Court for entry of summary judgment in their favor, pursuant to Federal Rule

Civil Procedure 56(a), dismissing the Complaint in its entirety for lack of subject matter

jurisdiction, or in the alternative, for an Order, applying certain exemptions and calculation

methods, and dismissing Plaintiff's claims for liquidated damages, as stated more fully in

Defendants' Brief in Support for Summary Judgment.

Dated:  April 20, 2017                                    Respectfully submitted,

/s/Jeffrey S. Theuer_____
                                                  Jeffrey S. Theuer (P44161)
                                                  Warren H, Krueger (P74115)
                                                  LOOMIS,   EWERT,   PARSLEY,
                                                  DAVIS & GOTTING, P.C.
                                                  124 West Allegan, Suite 700
                                                  Lansing, MI 48933
                                                  (517) 482-2400
                                                  jstheuer@loomislaw.com
                                                  Attorneys for Defendants

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**NORTHERN DIVISION**

**EDWARD C. HUGLER**,
Acting Secretary of Labor,
United States Department of Labor,          Civil Action No. 1:16-cv-11552-TLL-PTM

       Plaintiff,          Hon. Thomas L. Ludington

   v.

**TIMBERLINE SOUTH LLC**, a Michigan
Limited liability company, and
**JIM PAYNE**, an individual,

       Defendants.
_____/


**DEFENDANTS' BRIEF IN SUPPORT**
**OF MOTION FOR SUMMARY JUDGMENT**

## <u>CONCISE STATEMENT OF ISSUES PRESENTED</u>

I.     Is there subject matter jurisdiction under the Fair Labor Standards Act of 1938, 29 U.S.C. § 201, *et seq.* ("FLSA") in this case where Defendants' activities are conducted wholly intrastate in the state of Michigan?

Plaintiff says: "Yes."

Defendants say: "No."

II.    In the alternative, if jurisdiction exists under the FLSA, does the Motor Carrier Exemption, 29 U.S.C. § 213(b)(1), exempt all Defendants' drivers, loaders, and mechanics from the obligation to pay overtime?

Plaintiff says: "No."

Defendants say: "Yes."

III.   In the alternative, if jurisdiction exists under the FLSA, did Plaintiff improperly calculate alleged unpaid overtime?

Plaintiff says: "No."

Defendants say: "Yes."

IV.   In the alternative, if jurisdiction exists under the FLSA, should liquidated damages be denied because Defendants operated under a reasonable good faith belief that their compensation structure complied with law?

Plaintiff says: "No."

Defendants say: "Yes."

**CONTROLLING OR MOST APPROPRIATE AUTHORITY**

I.      29 U.S.C. § 207(a)(1)
        29 U.S.C. § 203(b)
        29 U.S.C. § 203(i)
        29 U.S.C. § 203(j)
        *Martinez v. Petrenko*, 792 F.3d 173 (1st Cir. 2015)
        *Houchin v. Thompson*, 438 F.2d 927 (6th Cir. 1970)
        *Hunter v. Madison Ave Corp.*, 174 F.2d 164 (6th Cir. 1949)


II.     29 U.S.C. § 213(a)
        29 U.S.C. § 213(b)(1)
        29 U.S.C. § 203(s)(1)(A)
        49 U..C. § 31502
        29 C.F.R. § 782.1
        29 C.F.R. § 782.7(b)(1)
        *Finn v. Dean Transp., Inc.*, 53 F.Supp.3d 1043 (MD Tenn. 2014)
        *Baird v. Wagoner Transp. Co.*, 425 F.2d 407 (6th Cir. 1970)
        *Vaughn v. Watkins Motor Lines, Inc.*, 291 F.3d 900 (6th Cir. 2002)
        *Merchants Fast Motor Lines, Inc. v. Interstate Commerce Commission*, 528 F.2d
        1042 (5th Cir. 1976)


III.    29 C.F.R § 778.109
        29 C.F.R § 778.320(b)
        29 U.S.C. § 207(b)(3)(C)
        29 U.S.C. § 251, *et seq.*
        29 U.S.C. § 251(a)
        29 U.S.C. § 254(a)


IV.     29 U.S.C. § 216(c)
        29 U.S.C. § 251, *et seq.*
        29 U.S.C. § 260
        *Samson v. Apollo Res., Inc.*, 242 F.3d 629 (5th Cir. 2001)
        *Elwell v. Univ. Hosps. Homecare Servs.*, 276 F.3d 832 (6th Cir. 2002)

## TABLE OF CONTENTS

CONCISE STATEMENT OF ISSUES PRESENTED .................................................... ii

CONTROLLING OR MOST APPROPRIATE AUTHORITY .................................... iii

INDEX OF AUTHORITIES .................................................................................... v

INDEX OF EXHIBITS TO DEFENDANTS' BRIEF IN SUPPORT .......................... vii

I.      INTRODUCTION ........................................................................... 1

II.     STATEMENT OF FACTS ............................................................... 3

III.    LEGAL ARGUMENT ..................................................................... 7

    A.      Applicable Legal Standard ...................................................... 7

    B.      There Is No Jurisdiction Under the Fair Labor Standards Act ....................................... 8

       1.    Rule of De Minimis ........................................................ 12

    C.      The Motor Carrier Act Exemption Exempts All of Timberline's Drivers, Loaders,  and
            Mechanics from the FLSA's Overtime Provisions. ........................................ 12

    D.      USDOL's Summary of Unpaid Wages is Improperly Calculated. ................................ 17

    E.      Liquidated Damages Should Be Denied Because Defendants Operated Under the
            Reasonable Good Faith Belief That Their Compensation Structure Complied with
            Law  ......................................................................................... 20

IV.     CONCLUSION ............................................................................... 25

# INDEX OF AUTHORITIES

**Cases**

Authority not available. ..................................................................................... 7, 8

*Baird v. Wagoner Transp. Co.*, 425 F.2d 407, 410 (6th Cir. 1970) ................................. 13

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed. 2d 265 (1986) ....... 8

*Dickson v. Univ. of Toledo*, 702 F.3d 269, 273 (6th Cir. 2012) ........................................ 8

*Elwell v. Univ. Hosps. Homecare Servs.*, 276 F.3d 832, 841 (6th Cir. 2002) ............................ 22

*Finn v. Dean Transp., Inc.*, 53 F.Supp.3d 1043, 1051 (MD Tenn. 2014) .......................... 8, 13, 16

*Hodgson v. Ewing*, 451 F.2d 526, 528 n.2 (5th Cir. 1971) ............................................ 10

*Houchin v. Thompson*, 438 F.2d 927, 928-29 (6th Cir. 1970) ................................... 10, 12

*Hunter v. Madison Ave. Corp.*, 174 F.2d 164, 167 (6th Cir. 1949), *cert. denied*, 338 U.S. 836, 70 S.Ct. 45, 94 L.Ed. 510 (1949) ......................................................................... 12

*Martinez v. Petrenko*, 792 F.3d 173, 175 (1st Cir. 2015) ............................................. 9

*Merchants Fast Motor Lines, Inc. v. Interstate Commerce Commission*, 528 F.2d 1042, 1044 (5th Cir. 1976) .......................................................................................... 14

*Mitchell v. Moore*, 241 F.2d 249, 250 (6th Cir. 1957) ............................................... 10

*Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009) ..................................... 8

*Pack v. Damon Corp.*, 434 F.3d 810, 813 (6th Cir. 2006) ............................................. 8

*Samson v. Apollo Res., Inc.*, 242 F.3d 629, 640-41 (5th Cir. 2001) ................................. 22

*Thorne v. All Restoration Servs., Inc.*, 448 F.3d 1264, 1266 (11th Cir. 2006) ........................ 10

*Vaughn v. Watkins Motor Lines, Inc.*, 291 F.3d 900, 904 (6th Cir. 2002) ............................. 13

*Wirtz v. Wohl Shoe Co.*, 382 F.2d 848, 850 (5th Cir. 1967) ......................................... 10

## Statutes

29 U.S.C. § 203 ............................................................................................ 3, 9, 11, 14

29 U.S.C. § 207 ............................................................................................ 3, 9, 11, 17

29 U.S.C. § 213 .................................................................................................. 6, 12, 13

29 U.S.C. § 216 ............................................................................................................ 20

29 U.S.C. § 254 ............................................................................................................ 18

29 U.S.C. § 260 .................................................................................................. 3, 22, 25

49 U.S.C. § 31502 ........................................................................................................ 13

Fair Labor Standards Act, 29 U.S.C. § 201 *et seq* .................................................... 1

MCL 408.414a ............................................................................................................. 11

*Portal-to-Portal Act of 1947* 29 U.S.C. § 251, *et seq* ................................... 3, 17, 20, 21

## Other Authorities

29 C.F.R. § 778.109 ..................................................................................................... 17

29 C.F.R. § 778.320 ..................................................................................................... 17

29 C.F.R. § 782.1 ......................................................................................................... 13

29 C.F.R. § 782.7 ......................................................................................................... 15

Fed. R. Civ. P. 56 ........................................................................................................... 8

USDOL FS #19 ...................................................................................................... 13, 14

USDOL FS #44 ............................................................................................................ 16

**INDEX OF EXHIBITS TO DEFENDANTS' BRIEF IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT**

| **Exhibit** | **Description** |
|---|---|
| DX 1 | Summary of Unpaid Wages |
| DX 2 | Affidavit of Jim Payne |
| DX 3 | U.S. Bureau of Labor Statistics (BLS) Industry Wage Summaries |
| DX 4 | Employee W-2s |
| DX 5 | Wrona Deposition Transcript |
| DX 6 | USDOT Registration Numbers |
| DX 7 | Defendants' Second Supplemental Objections and Answers to Plaintiff's First Set of Requests for Admissions, dated February 16, 2017 |
| DX 8 | Summary of Recalculated Overtime |
| DX 9 | Wrona email to supervisors verifying liquidated damages |
| DX 10 | Personal Interview Statement of Matthew Rooyakker, dated August 21, 2015 |
| DX 11 | Payne Deposition Transcript |
| DX 12 | Rooyakker Deposition Transcript |
| DX 13 | USDOL Fact Sheet #19 |
| DX 14 | USDOL Fact Sheet #44 |

# I.    INTRODUCTION

This case results from an improperly performed wage investigation, and the government's refusal to re-evaluate its overtime assessment, or exercise a reasonable methodology. A properly conducted investigation could have avoided litigation altogether. That did not happen. Instead, Plaintiff seeks to impose a ruinous assessment on a small employer that has always paid its employees at, and often well above, average industry wages, and reasonably believed its compensation structure to comply with the law.

On November 20, 2015, the U.S. Department of Labor ("USDOL"), through its investigator Jeffrey Wrona, issued a Summary of Unpaid Wages in the amount of $262,073.03 (all of which is allegedly unpaid overtime), plus a one-hundred percent (100%) liquidated damages penalty, for a total assessment of $524,146.06. *See* Summary of Unpaid Wages (**DX 1**). As shown below, subject matter jurisdiction is lacking this case, and even if it weren't, the USDOL investigator failed to properly determine applicable exemptions under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* (the "FLSA") or properly calculate the alleged overtime, and did not even meet with Defendant Timberline's manager, Defendant Jim Payne, until after the assessment was issued. The assessment itself was calculated in a manner to maximize the amount of assessment, rather than to accurately reflect the proper application of the FLSA, and its exemptions. The USDOL investigator himself was inexperienced, having spent the majority of his career in the automotive servicing industry, and had never investigated a timber harvesting company. The government has refused to disclose the reason for the investigation, why the government believes no exemptions to the FLSA apply in this case, or why the imposition of a one-hundred percent liquid damages sanction is appropriate.

Defendant Timberline is a small business, employing less than thirty employees at any given time. It is in the business of harvesting raw timber, generally from professionally managed timber stands owned by State and private entities. As detailed below, Timberline's activities occur solely in the state of Michigan. *See* Affidavit of Jim Payne, **DX 2**, ¶ 4. During the investigation period of August 31, 2013, through August 22, 2015, Defendant Timberline cut timber only in the state of Michigan. DX 2, ¶ 5. It loaded and transported that timber, using its own trucks, to mills located solely in the state of Michigan. DX 2, ¶ 6. Neither Defendant Timberline nor Defendant Payne have any interest or control over the operations of the mills to which these deliveries were made. DX 2, ¶ 8.  Defendant Timberline has no offices, equipment, or employees outside the state of Michigan, and conducts no business outside the state of Michigan DX 2, ¶ 4. All of its timber contracts were negotiated and signed in the state of Michigan. DX 2, ¶ 7. All of Timberline's equipment was purchased in the state of Michigan, although Defendants acknowledge that some of its harvesting equipment was likely manufactured elsewhere. DX 2, ¶ 9.

Timberline's compensation structure was designed to be competitive. DX 2, ¶ 12. The structure is somewhat complex in that different compensation elements are provided to individual employees, depending on how the employee chooses to be compensated. The compensation package includes compensation for many items for which employers are not required to provide compensation, including payment for travel to work time, lunch pay, fuel, a flat daily rate, a company mobile phone, and also included a base hourly rate or piece rate. This compensation structure was created based on Defendant Payne's good faith belief that timber harvesting was subject to an exemption from overtime requirements as an agricultural activity, and would not have been structured in that way otherwise. DX 2, ¶ 11 and 12.  As shown below, the resulting employee compensation is at and often well above industry average for this type of work. **DX 3** (Wage

Summaries) and **DX 4** (W-2s). Despite this, the government in this lawsuit seeks to impose additional compensation requirements, and one-hundred percent liquidated damages against these Defendants. Defendants assert that the government's position is unreasonable, unfair, and not in compliance with the FLSA.

Defendants request summary judgment in this matter based on two mutually exclusive, alternative theories. First, Defendants assert that the case should be dismissed for lack of subject matter jurisdiction because all of Timberline's activities are wholly intrastate, and they do not engage in "commerce" nor the "production of goods for commerce" within the meaning of the FLSA. 29 U.S.C. § 203(s)(1)(a) and 29 U.S.C. § 207. Second, in the alternative, if the Court determines that Timberline is subject to the FLSA because it engages in commerce or the production of goods for commerce, one or more exemptions apply, and should have been recognized by the USDOL investigator, to substantially reduce the amount of the assessment. Further, otherwise non-compensable elements of compensation should have been removed from the investigator's calculation of a "regular rate," thereby substantially reducing any alleged overtime obligation. *See Portal-to-Portal Act of 1947* 29 U.S.C. § 251, *et seq.* Finally, Defendants respectfully request that the Court award no liquidated damages based on Defendants' good faith and reasonably held belief that its compensation structure did not violate the FLSA. *See* 29 U.S.C. § 260.

## II.   <u>STATEMENT OF FACTS</u>

Defendant Timberline is a Michigan limited liability company, established in 2010. *See* Affidavit of Jim Payne, ¶ 2 (DX 2). Defendant Payne is not an owner of Defendant Timberline, but Payne directs all operations of the company, and established its compensation structure, which

is at issue in this case. *Id*. at ¶ 2. Timberline is in the business of cutting raw timber, and transporting that timber to mills within the state of Michigan.

Significantly for purposes of this case, and at all times relevant to the Complaint, Timberline's activities have occurred solely within the state of Michigan. *Id*. ¶ 4. Timberline harvests no timber outside the state of Michigan. *Id.* ¶ 5. Timberline transports all cut timber to mills located solely within the state of Michigan. *Id.* ¶ 6. Timberline does not work with any customers outside the state of Michigan. *Id*. ¶ 7. All timber cutting contracts were entered into in the state of Michigan. *Id*. ¶ 7. Timberline and Payne have no ownership interest in any mill, and have no control or expectation regarding the eventual destination or use of the timber it delivers. *Id.* ¶ 8. Timberline buys all of its equipment and supplies within the state of Michigan, including the heavy equipment used to harvest trees. *Id*. ¶ 9.

At the time Timberline was being formed, Defendant Payne consulted with the company's business accountant, Matthew Rooyakker, on various business issues. During the course of these formation activities, Defendants specifically inquired of Mr. Rooyakker whether the company's forestry activities resulted in an exemption from the requirement to pay overtime to its employees. *Id.* ¶ 10. Timberline's accountant looked into the matter, and advised Payne that Timberline was exempt from the obligation to pay overtime. *Id*. ¶ 10. In reliance upon this advice, Defendants set up a compensation structure which was composed of numerous elements, including an hourly wage, a cord/piece rate, a daily rate, payment for drive to work time, payment for lunch time, payment for fuel, and cellphones. *Id.* ¶ 11. Not all employees received the same elements of compensation.

This compensation structure resulted in total employee compensation at, and in some cases well above, local industry average for this type of work. *See* U.S. Bureau of Labor Statistics (BLS)

Industry Wage Summaries (DX 3). In several instances, the compensation structure resulted in total compensation of more than $90,000 per year for some of Timberline's employees. *See* W-2s, attached as DX 4. Local average yearly wages for logging equipment operators is $31,500 according to the BLS. DX 3.

In August 2015, Timberline was contacted by USDOL investigator Jeffrey Wrona to conduct a wage investigation. Mr. Wrona visited the employer's site, and was provided with requested documentation. On November 20, 2015, Mr. Wrona issued a Summary of Unpaid Wages (DX 1) which assessed unpaid overtime wages in the amount of $262,073.03, plus a one-hundred percent liquidated damages assessment, for a total of $524,146.06. The Summary of Unpaid Wages did not designate any Timberline employees as exempt under the FLSA. DX 1; Wrona Dep., at 32 (DX 5). Mr. Wrona also based his calculation of alleged actual hours worked on estimates drawn from employee interviews, rather than actual timecards. *See e.g.* DX5 at 61, 63 ("The total hours is estimated…."), 65, 68, 76. Mr. Wrona also failed to inquire as to whether non-compensable time was included in the total hours worked used in his calculations. DX 5 at 76 ("The hours worked, there's an estimated average, so I don't know if drive time would be included in it or not.").

At the time of the Timberline investigation, Mr. Wrona had been a Wage and Hour Investigator for three and a half years (Wrona Dep., at 7, DX 5), and had completed two three-week training sessions known as "Basic 1" and "Basic 2." Wrona Dep., at 6, 9-10 (DX 5). Prior to becoming a Wage and Hour Investigator, he had worked as a cost price analyst for the Department of Defense (Wrona Dep., at 6-7) (DX 5), and had a twelve-year career as a service advisor for an auto dealership, and three years as a service manager for an equipment rental company. Wrona Dep., at 8-9 (DX 5). At the time of the Timberline investigation, Mr. Wrona had never conducted an investigation of a timber company. Wrona Dep., at 11 (DX 5). Mr. Wrona admitted that the

5

liquidated damages portion of the assessment was "computer generated." Wrona Dep., at 18, 21 (DX 5). Mr. Wrona determined that Timberline was covered under "Enterprise Coverage under the Act." Wrona Dep., at 22 (DX 5). Mr. Wrona determined that Timberline participated in interstate commerce solely "through purchase of heavy equipment." Wrona Dep., at 22-23 (DX 5). That is the sole basis for Wrona's determination of interstate commerce supporting FLSA jurisdiction. DX 5 at 23.

Mr. Wrona admitted that he was required to determine which exemptions might apply during investigation. Wrona Dep., at 25 (DX 5). However, in this case, he did not determine that any exemptions to the FLSA applied. Wrona Dep., at 26 (DX 5). Wrona admitted that he did not review records to determine whether at least eight employees were involved in forestry activities for purposes of the exemption at 29 U.S.C. § 213(b)(28). Wrona Dep., at 27-28 (DX 5). Mr. Wrona determined that the MCA Exemption did not apply solely because Timberline's trucks do not cross state lines. Wrona Dep., at 30, 33 (DX 5). As discussed below, Defendants assert that Mr. Wrona's understanding of these issues is incorrect as a matter of law. Wrona made the further determination that the logs cut by Timberline and delivered to local mills were not interstate commerce. Wrona Dep., at 36 (DX 5). Nonetheless, Wrona determined that FLSA jurisdiction existed under so-called "enterprise jurisdiction." As discussed below, Defendants assert that enterprise jurisdiction also requires interstate commerce, and if the logs did not constitute interstate commerce, Wrona should have found no enterprise jurisdiction as well. Further, Defendants contend that if interstate commerce existed, Wrona should have applied various exemptions, most importantly the FLSA's MCA Exemption. Instead, Wrona determined that enterprise jurisdiction attached because Timberline was engaged in interstate commerce, and had gross sales of more than $500,000 per year, but also determined that the MCA Exemption did not apply because the logs cut and delivered

6

by Timberline to local mills were not interstate commerce. Wrona Dep., at 36 (DX 5). In fact,
Wrona admitted that he made no determination at all whether Timberline's drivers and mechanics
were subject to the Secretary of Transportation's authority for purposes of the MCA Exemption
"because I don't enforce the Department of Transportation laws." Wrona Dep., at 38 (DX 5). Mr.
Wrona further admitted that he knew that the total hours he used to calculate his overtime
assessment included home to work time and meal time, which is normally not compensable by an
employer. Wrona Dep., at 52-53 (DX 5). He nonetheless included those hours in his calculation of
overtime hours. *Id.* at 52-54 (DX 5). Mr. Wrona further admitted that he did not base his total
hours worked on actual records reviewed at the employer's place of business. Instead, he
estimated, and used the same basic number of hours for many employees for every work week.
Wrona Dep., at 61 and 68 (DX 5) ("throughout all the interviews and throughout the other
employees working there, they all worked relatively the same hours."). When he did not estimate
based on an interview, Mr. Wrona sometimes simply divided gross pay for a workweek by a set
number of hours to determine total hours worked. For example, with respect to one employee, Mr.
Wrona divided gross pay of $2,448 by a pay rate of $22.00 per hour, to arrive at 111.27 hours
worked in a single workweek, which amounts to 22.25 hours per day. Wrona Dep., at 57-58 (DX
5). Defendants assert that these calculations are unreliable and cannot support the government's
position in this case.

### III.    LEGAL ARGUMENT

#### A.    Applicable Legal Standard

Summary judgment is proper if the moving party "shows that there is no genuine dispute
as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.
56 (a). The Supreme Court has explained that "the plain language of Rule 56 [ ] mandates the entry

7

of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed. 2d 265 (1986). "If a moving defendant shows that there is no genuine issue of material fact as to at least one essential element of the plaintiff's claim, the burden shifts to the plaintiff to provide evidence beyond the pleadings, 'set[ting] forth specific facts showing that there is a genuine issue for trial.'" *Finn v. Dean Transp., Inc.*, 53 F.Supp.3d 1043, 1050 (MD Tenn. 2014) *quoting, Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009).

In deciding a motion brought under Rule 56, the Court must view the evidence in a light most favorable to the non-moving party. *See Pack v. Damon Corp.*, 434 F.3d 810, 813 (6th Cir. 2006). The non-moving party may not rely on mere allegations or denials, but must cite to particular parts of materials in the record as establishing that one or more material facts are "genuinely disputed." Fed. R. Civ. P. 56 (c)(1). Any supporting or opposing affidavits or declarations "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56 (c)(4). In the case of cross-motions for summary judgment, "the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Dickson v. Univ. of Toledo*, 702 F.3d 269, 273 (6th Cir. 2012) (internal punctuation omitted).

**B.    There Is No Jurisdiction Under the Fair Labor Standards Act.**

The FLSA does not cover every employment situation. Jurisdiction exists "only when the employee individually or the employer's enterprise as a whole is 'engaged in commerce or in the

production of goods for commerce.'" *Martinez v. Petrenko*, 792 F.3d 173, 175 (1st Cir. 2015) (*quoting* 29 U.S.C. § 207(a)(1)). The government asserts jurisdiction in this matter based on enterprise coverage under 29 U.S.C. § 207(a)(1), which provides as follows:

> (1) Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1). *See* Compl., ¶ IV.

Enterprise coverage attaches to a business where it is an "enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 207(a)(1). This phrase is composed of several elements defined under the FLSA. "Commerce" means "trade, commerce, transportation, transmission, or communication among the several States, or between any State and any place outside thereof." 29 U.S.C. § 203(b). "Goods" means "goods (including ships and marine equipment), wares, products, commodities, merchandise, or articles or subjects of commerce of any character, or any part or ingredient thereof, but does not include goods after their delivery into the actual physical possession of the ultimate consumer thereof other than a producer, manufacturer, or processor thereof." 29 U.S.C. § 203(i). The term "Produced" means "produced, manufactured, mined, handled, or in any other manner worked on in any State." 29 U.S.C. § 203(j).

The FLSA further provides that "for the purposes of this chapter an employee shall be deemed to have been engaged in the production of goods if such employee was employed in producing, manufacturing, mining, handling, transporting, or in any other manner working on such goods, or in any closely related process or occupation directly essential to the production thereof, in any State." 29 U.S.C. § 203(j). The enterprise must directly produce a good in interstate

9

commerce. This is made clear by the fact that in 1949, Congress amended subsection (j) to limit the scope of the FLSA. *See Mitchell v. Moore*, 241 F.2d 249, 250 (6th Cir. 1957). The amendment inserted "closely related" before the word "process," and substituted "directly essential" for "necessary" after "occupation" in subsection (j). *See Hodgson v. Ewing*, 451 F.2d 526, 528 n.2 (5th Cir. 1971). This amendment restricted the FLSA so that it would no longer cover employees whose work was not directly essential to the production of goods. *Mitchell v. Moore*, 241 F.2d at 251. "In order for coverage to exist, the amendment requires a closer and more direct relationship to the producing activity than [previously] existed." *Id.* In the context of individual FLSA jurisdiction, after the 1949 amendment, the Sixth Circuit rejected application of the FLSA to maintenance workers of a building based on the commercial activities of the tenants of that building. *See Houchin v. Thompson*, 438 F.2d 927, 928-29 (6th Cir. 1970). To be "engaged in commerce," an employee must be "directly participating in the actual movement of persons or things in interstate commerce." *Thorne v. All Restoration Servs., Inc.*, 448 F.3d 1264, 1266 (11th Cir. 2006). Further, it "is now settled that in enacting the FLSA Congress did not exercise the full scope of its authority to regulate the working conditions of employees whose activities merely affect commerce." *Wirtz v. Wohl Shoe Co.*, 382 F.2d 848, 850 (5th Cir. 1967). For an employee to be engaged in commerce under the FLSA, the employee must show that he or she (1) works for an instrumentality of interstate commerce, or (2) regularly uses the instrumentalities of interstate commerce as part of his or her work duties. *Thorne v. All Restoration Servs, Inc.*, 448 F.3d at 1266.

In this case, the undisputed facts on the record show that Timberline is not engaged in commerce or in the production of goods for commerce within the meaning of the FLSA. As discussed earlier, Timberline harvests no timber outside the state of Michigan. Timberline transports all cut timber to mills in the state of Michigan. The timber delivered to mills is not resold

10

as timber in interstate commerce. Instead, the timber is co-mingled with other timber and materials by the mills, and processed into various products, which may then be sold in interstate commerce by the mills. Defendants have no control or ownership interest in the mills, and play no role in the processing of the timber. The USDOL's own investigator concluded that the timber cut and delivered to mills by Defendants was not interstate commerce. DX 5, at 35-36.

Timberline does not work with any customers outside the state of Michigan. Timberline buys all of its equipment and supplies within the state of Michigan. The fact that Timberline uses equipment which may have been manufactured outside of the state of Michigan is not determinative. All of that equipment was purchased within the state of Michigan, and Timberline is the ultimate consumer of that equipment such that any interstate character the equipment may have had at one time, has now ceased to exist.

Timberline is not engaged in the production of goods. The timber cut by Timberline is not a good produce for commerce because all operations are conducted in Michigan alone, and the timber is not resold or otherwise placed in interstate commerce. Timberline delivers timber only in the state of Michigan, so any "commerce" is not "among the several states or between any state and any place outside thereof," within the meaning of 29 U.S.C. § 203(j). Timberline does not produce, manufacture, mine, handle, or in any other manner the products processed by the mills. Harvesting an agricultural commodity such as timber, is not included in the concepts of commerce or production of goods as used in 29 U.S.C. § 207(a)(1). The FLSA, therefore, does not apply to Timberline's activities in this case. Instead, Timberline is governed by state law, which is not at issue in this case, and which provides an overtime exemption for Timberline's activities in any event. *See* MCL 408.414a(4)(e).

11

1.    **Rule of De Minimis**

In enacting the FLSA, Congress "plainly indicated its purpose to 'leave local business to the protection of the states.'" *Houchin v. Thompson*, 438 F.2d 927, 928 (6th Cir. 1970). "Where some inconsequential incident of interstate commerce happens to result from the general conduct of a fundamentally intrastate business, the rule of de minimis is applicable and the Act does not apply." *Hunter v. Madison Ave. Corp.*, 174 F.2d 164, 167 (6th Cir. 1949), *cert. denied*, 338 U.S. 836, 70 S.Ct. 45, 94 L.Ed. 510 (1949). In *Hunter*, the defendant caused waste paper to be gathered from offices of a building in which it conducted cleaning operations to be sold to a waste paper dealer. Some of that paper was processed into roofing felt and sold into interstate commerce. *Hunter v. Madison Ave Corp.*, 174 F.2d at 167. The Sixth Circuit held that "such part of the roofing material as may have gone into commerce was too many steps removed from the process of handling by the building employees to come within the confines of the [FLSA]." *Id.* In this case, as in *Hunter*, the processing of raw timber into a product for interstate commerce by the mills did not involve these Defendants. There are "too many steps" between the manufacture of those products by the mills, and the delivery of raw timber by Timberline to support FLSA jurisdiction in this case. Further, the use of equipment purchased and used in Michigan, but manufactured elsewhere, should be insufficient for FLSA jurisdiction under the Rule of De Minimis. The remainder of this Brief applies only if the Court finds jurisdiction under the FLSA.

**C.    The Motor Carrier Act Exemption Exempts All of Timberline's Drivers, Loaders, and Mechanics from the FLSA's Overtime Provisions.**

The FLSA includes numerous exceptions to the Act's overtime provisions, if the FLSA applies. *See* 29 U.S.C. § 213(a) and (b). One of these exemptions, known as the "Motor Carrier Act Exemption" ("MCA Exemption"), is contained at 29 U.S.C. § 213(b)(1). Under this exemption, the FLSA's overtime provisions do not apply to "any employee with respect to whom

12

the Secretary of Transportation has power to establish qualifications and maximum hours of service" pursuant to the MCA, 49 U.S.C. § 31502. 29 U.S.C. § 213(b)(1). "By its express terms, the MCA Exemption set forth in FLSA § 13(b)(1) applies if the Secretary has the 'power' to regulate a particular employee under the MCA, regardless of whether the Secretary has actually exercised that power." *Finn v. Dean Transp., Inc.*, 53 F.Supp.3d 1043, 1051 (MD Tenn. 2014), *citing*, *Baird v. Wagoner Transp. Co.*, 425 F.2d 407, 410 (6th Cir. 1970) ("If Appellees are within the [Secretary's] power, as defined in the MCA, they are exempted from the maximum hours provisions of the FLSA and not entitled to recover overtime."). The Code of Federal Regulations further clarifies that where the Secretary of the DOT has such power, the exemption applies "automatically." 29 C.F.R. § 782.1 provides as follows:

> It is settled… that the applicability of the exemption to an employee otherwise entitled to the benefits of the Fair Labor Standards Act is determined exclusively by the existence of the power conferred under section 204 of the Motor Carrier Act to establish qualifications and maximum hours of service with respect to him. *It is not material whether such qualifications and maximum hours of service have actually been established by the Secretary of Transportation; the controlling consideration is whether the employee comes within his [the Secretary's] power to do so.* The exemption is not operative in the absence of such power, but an employee with respect to whom the Secretary of Transportation has such power is excluded, *automatically,* from the benefits of section 7 of the Fair Labor Standards Act.

29 C.F.R. § 782.1 (emphasis added).

The MCA provides the Secretary of DOT with the authority to regulate the hours of an employee (1) who works for a private motor carrier that provides transportation in interstate commerce, and (2) whose work activities affect the safety of that motor carrier. *See Vaughn v. Watkins Motor Lines, Inc.*, 291 F.3d 900, 904 (6th Cir. 2002); 49 U.S.C. § 31502. Timberline is a motor private carrier. USDOL Fact Sheet #19 defines "motor private carriers" as "persons other

13

than motor carriers transporting property by motor vehicle if the person is the owner, lessee, or bailee of the property being transported, and the property is being transported for sale, lease, rent, or bailment, or to further a commercial enterprise." USDOL FS #19 (**DX 13**). In this case, it is undisputed, and should have been clear to the government's field investigator, that Timberline qualifies as a Motor Private Carrier because it transports property by motor vehicle, and it is the owner or "bailee" of the timber being transported.

Crossing State lines is not a requirement for the Motor Carrier Act and related MCA Exemption to apply. If a motor carrier is engaged in interstate commerce, the Secretary of DOT has regulatory power sufficient to implicate DOT jurisdiction, and the exemption.

> It is elemental that a carrier is engaged in interstate commerce when transporting goods either originating in transit from beyond [the State] or ultimately bound for destinations beyond [the State], even though the route of a particular carrier is wholly within one state. Traffic need not physically cross state lines to be in interstate commerce, if the goods carried are in the course of through transit. 'Through' is not to be confused with purely 'local' traffic not destined for points outside the state of origin. *Shew v. Southland Corporation (Cabell's Dairy Div.)* [370 F.2d 376, 380 (5th Cir. 1966)]

*Merchants Fast Motor Lines, Inc. v. Interstate Commerce Commission*, 528 F.2d 1042, 1044 (5th Cir. 1976). This is, of course, the basis for the government's assertion of jurisdiction in this case. The government filed suit under so-called "enterprise" jurisdiction. *See* Compl., ¶ IV. That jurisdictional basis requires that Timberline be "engaged in commerce or in the production of goods for commerce," and have an annual gross volume of sales of "not less than $500,000…." 29 U.S.C. § 203(s)(1)(A). Defendants stipulate to the annual sales in excess of $500,000 component. But, if the Court determines that Timberline is engaged in commerce, or the production of goods for commerce, despite its wholly intrastate activities, the government cannot

14

have it both ways and assert that Timberline is not engaged in interstate commerce for purposes of the MCA Exemption. Nonetheless, this is exactly what the government has done.

The USDOL's own Regulations make clear that just because a vehicle does not actually cross state lines *does not mean that the MCA Exemption is inapplicable*. The applicable Regulation provides as follows:

> Highway transportation by motor vehicle from one State to another, in the course of which the vehicles cross the State line, clearly constitutes interstate commerce under both [FLSA and MCA] acts. Employees of a carrier so engaged, whose duties directly affect the safety of operation of such vehicles, are within the exemption in accordance with principles previous stated. *** The result is no different where the vehicles do not actually cross State lines but operate solely within a single State, if what is being transported is actually moving in interstate commerce within the meaning of both acts; the fact that other carriers transport it out of or into the State is not material.

29 C.F.R. § 782.7 (b)(1). This guidance is particularly significant in this case, because the USDOL field investigator not only ignored this portion of the guidance, but also ignored the underlying enforcement policy contained in the same section:

> Under this enforcement policy it will ordinarily be assumed by the Administrator that the interstate commerce requirements of the section 13(b)(1) [MCA] exemption are satisfied where it appears that a motor carrier employee is engaged as a driver, driver's helper, loader, or mechanic in transportation by motor vehicle which, although confined to a single State, is a part of an interstate movement of the goods or persons being thus transported so as to constitute interstate commerce within the meaning of the Fair Labor Standards Act.

29 C.F.R. § 782.7 (b)(1). Contrary to this directive, the investigator in this case, Mr. Wrona, instead determined that because Timberline's trucks did not cross state lines, the MCA Exemption did not apply. Not only was this conclusion wrong, it was a fundamental violation of the government's obligation to make a fair and supportable determination as to all applicable exemptions during a

15

USDOL investigation. *See* USDOL FS #44 (**DX 14**) (advising employers that the government investigator will determine any applicable exemptions during the course of any investigation). In this case, the investigator, and subsequently the USDOL's solicitor division, has refused to reconsider the applicability of the MCA Exemption in this case, which amounts to more than half the alleged assessment.

The investigator failed to account for other relevant factors as well, including whether any Timberline drivers maintain Commercial Driver's Licenses ("CDLs"), which make them subject to regulation by the Secretary of the DOT, or whether Timberline's trucks have USDOT registration numbers. The answer to both these inquiries is "yes." Defendant Payne's affidavit makes clear that all Timberline's drivers are required to have CDLs (DX 2, at § 3). A print-out from the USDOT's website containing Timberline's USDOT numbers is attached as **DX 6.** These facts have been held to establish sufficient regulatory authority by the Secretary of DOT to support application of the MCA Exemption in FLSA cases. *See Finn v. Dean Transp., Inc.*, 53 F.Supp.3d, at 1057 – 58. The MCA Exemption, therefore, applies to all of the following Timberline employees: Kurt Abbe, Gail Baur, Patrick Cobb, Buddy Davis, Clinton Fletcher, Tom Freeman, Charles Hamilton, Jesse Jacobs, Gary Nadell, Randy Newberry, Ed Palmer, Phillip Ronaniak, Kurt Sanborn, Scott Weber, Darren Bell, Jerry Cross, and Kenneth Muller (all drivers), and Abe Jacobs (mechanic), and all other drivers, loaders and mechanics. S*ee* Affirmative Defense No. 2; Defendant's Second Supplemental Objections and Answers to Plaintiff's First Set of Requests for Admissions, No. 16 (**DX 7**). Defendants request that all alleged assessment amounts related to these employees be dismissed.

16

**D.     USDOL's Summary of Unpaid Wages is Improperly Calculated.**

The USDOL investigator calculated an alleged "regular rate," and incorrectly determined hours worked in this case. This resulted in an unsupportable and overinflated assessment. Timberline's employees were compensated using a combination of cord rates, daily rate amounts, hourly rates, fuel and mobile phone compensation, and payment for time not customarily subject to compensation, such as travel to work time and lunch time. This lawsuit effectively seeks to require Timberline to adopt a compensation system not required by law, and penalizes Timberline for compensating its employees at or above market compensation rates solely because the government does not favor Timberline's compensation structure. The FLSA does not require employers to compensate employees on an hourly rate basis. *See* 29 C.F.R. § 778.109. If the FLSA applies in this case, certain components of Timberline's compensation structure should not have been included in the government's calculation of hours worked or alleged unpaid overtime. For example, drive to work time and lunch time, which were paid by Timberline, should have been excluded from the assessment. 29 U.S.C. § 207 (b)(3)(C). Additionally, 29 C.F.R. § 778.320 (b) provides that these components do not count as hours worked. These regulations are based on provisions of the Portal-to-Portal Act of 1947, 29 U.S.C. § 251, *et seq.* The Portal-to-Portal Act makes clear that employers are not liable for time spent traveling from home to employees' workplace before the start of the workday, or traveling from the workplace to their homes after the workday is over, amongst other things. The statute provides as follows:

> (a) ACTIVITIES NOT COMPENSABLE. Except as provided in subsection (b) of this section, *no employer shall be subject to any liability or punishment under the Fair Labor Standards Act of 1938, as amended* [29 U.S.C. 201 *et seq.*], the Walsh-Healey Act, or the Bacon-Davis Act, *on account of the failure of such employer to pay an employee* minimum wages, or to pay an employee *overtime compensation, for or on account of any of the following activities* of such employee engaged in on or after May 14, 1947—

17

> (1) walking, riding, or *traveling to and from the actual place of performance of the principal activity or activities* which such employee is employed to perform, and
>
> (2) *activities which are preliminary to or postliminary to said principal activity or activities*,
>
> which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities. For purposes of this subsection, the use of an employer's vehicle for travel by an employee and activities performed by an employee which are incidental to the use of such vehicle for commuting shall not be considered part of the employee's principal activities if the use of such vehicle for travel is within the normal commuting area for the employer's business or establishment and the use of the employer's vehicle is subject to an agreement on the part of the employer and the employee or representative of such employee.

29 U.S.C. § 254(a) (emphasis added).

During the course of the litigation, Defendants were asked to state the amount of overtime wages they believe to be due if the FLSA applied to Timberline. In response, Defendants prepared a document titled, "Summary of Recalculated Overtime" (**DX 8**) ("Recalculation" document), which was provided to Plaintiff with Defendants' Supplemental Objections and Answers to Plaintiff's First Set of Interrogatories, served on December 23, 2016. That document applied the MCA Exemption to all driver employees, and applied the administrative employee exemption to Lorrie Grubbe and Cheryl Klein, the two employees who worked as office managers during the investigation. With respect to all other employees, the Recalculation document deducted drive time and lunch time from total hours, and credited fuel and phone compensation against the compensation due in order to arrive at an accurate recalculation of overtime. Total hours were taken from Timberline's time records, and gross pay was taken from Timberline's payroll records. The document was then spot-checked and reformatted by Timberline's accountant, Matthew

Rooyakker. The recalculated amount of overtime due was $11,199.26. *See* DX 8, at 2.  The principal difference between the USDOL investigator's assessment and the Recalculation document is the application of the MCA Exemption, and the backing out of travel to work time, and lunch time, from the calculation of hours worked. As indicated above, travel to work time and lunch time are not required elements of compensation, and Timberline cannot be subject to any liability or punishment under the FLSA for that time pursuant to the Portal-to-Portal Act.

The purpose of the Portal-to-Portal Act was to protect employers from unexpected liabilities under just the circumstances involved in this litigation. This is nowhere made clearer than in the introductory section of the Act, titled "Findings and Policy." 29 U.S.C. § 251(a). The Findings and Policy section provides in part as follows:

> (a) The Congress finds that the Fair Labor Standards Act of 1938, as amended [29 U.S.C. 201 *et seq.*], has been interpreted judicially in disregard of long-established customs, practices, and contracts between employers and employees, thereby creating wholly unexpected liabilities, immense in amount and retroactive in operation, upon employers with the results that, if said Act as so interpreted or claims arising under such interpretations were permitted to stand,

> (1) the payment of such liabilities would bring about financial ruin of many employers and seriously impair the capital resources of many others, thereby resulting in the reduction of industrial operations, halting of expansion and development, curtailing employment, and the earning power of employees;

> (2) the credit of many employers would be seriously impaired;

> * * *

> (4) employees would receive windfall payments, including liquidated damages, of sums for activities performed by them without any expectation of reward beyond that included in their agreed rates of pay;

> (5) there would occur the promotion of increasing demands for payment to employees for engaging in activities no compensation

19

for which had been contemplated by either the employer or
employee at the time they were engaged in;

\*   \*   \*

29 U.S.C. § 251(a).

Significantly in this case, the USDOL investigator failed to ask whether any of the hours

reported as hours worked by Timberline's employees were drive to work time, or lunch time,

apparently because he incorrectly viewed it as the employer's burden to prove any exemptions

during an investigation. Wrona Dep., at 100 (DX 5). Wrona also included each employee's total

compensation, including non-compensable hours, in his calculation of the "regular rate." Wrona

Dep., at 106 (DX 5). This had the effect of artificially and improperly inflating both the regular

rate at which he calculated overtime, as well as the compensable hours worked. This methodology

violated the Portal-to-Portal Act by making Timberline liable for travel to and from each

employee's actual place of performance of work, and for the overtime based on those hours and

pay. The USDOL investigator had never performed an investigation of a timber company prior to

the Timberline investigation. Wrona Dep., at 11 (DX 5). His calculation was performed

improperly, and in violation of the Portal-to-Portal Act, and cannot support the government's

Complaint in this case.

**E.      Liquidated Damages Should Be Denied Because Defendants Operated Under the
         Reasonable Good Faith Belief That Their Compensation Structure Complied with
         Law.**

The government seeks liquidated damages in this case in the amount of one-hundred

percent of the alleged assessment. Compl., at 1; 29 U.S.C. § 216(c). In doing so, the government

has taken the position that the imposition of liquidated damages is mandatory, and simply a

mathematical calculation. In an email to his supervisors, the field investigator in this case requested

verification of the liquidated damages amount without any discussion of the rationale for

imposition of such a sanction. *See* **DX 9**. The only apparent effort made by the investigator to determine good faith was a telephone interview with Timberline's accountant, Matthew Rooyakker, on August 21, 2015. In the investigator's notes of that conversation, the investigator inaccurately reported Mr. Rooyakker as stating that he never told Timberline that the company qualified for an overtime exemption. *See* Personal Interview Statement, dated August 21, 2015, **DX 10**. Mr. Wrona never showed the alleged "Personal Interview Statement" to Mr. Rooyakker. DX 5 at 91. It is simply Mr. Wrona's inaccurate notes of the conversation. As discussed below, the government's position is incorrect as a matter of law, and its factual investigation was fatally flawed in that the record shows that Defendants reasonably consulted with their business accountant with respect to overtime exemptions, and at all times operated under the good faith belief that Timberline was exempt from overtime requirements under the FLSA.

Under the Portal-to-Portal Act of 1947, 29 U.S.C. § 251, *et seq.*, Congress has determined that the FLSA had created "wholly unexpected liabilities, immense in amount and retroactive in operation, upon employers with the results that *** employees would receive windfall payments, including liquidated damages, of sums for activities performed by them without any expectation of reward beyond that included in their agreed rates of pay." 29 U.S.C. § 251 (a)(4).

In response, with respect to liquidated damages, the Portal-to-Portal Act provides as follows:

> In any action commenced prior to or on or after May 14, 1947 to recover unpaid minimum wages, unpaid overtime compensation, or liquidated damages, under the Fair Labor Standards Act of 1938, as amended [29 U.S.C. § 201 *et seq.*], if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act of 1938, as amended, the court may, in its sound discretion, award no liquidated damages or award any amount

thereof not to exceed the amount specified in section 216 of this title.

29 U.S.C. § 260.

Under this standard, if an employer can demonstrate that it had both a subjective belief that it was in compliance with the FLSA, and it had an objectively reasonable basis for its belief, then the court may limit or deny an award of liquidated damages. *See Samson v. Apollo Res., Inc.*, 242 F.3d 629, 640-41 (5th Cir. 2001) (suggesting good faith may be found where an employer relies on the expertise or opinion of any other person or entity with knowledge of the FLSA regulations, including but not necessarily limited to its attorney or Department of Labor); *Elwell v. Univ. Hosps. Homecare Servs.*, 276 F.3d 832, 841 (6th Cir. 2002) (recognizing the absence of good faith where the Defendant did not rely on the expertise or opinion of any other person or entity with knowledge of FLSA regulations). In this case, the record clearly reflects that Defendant Payne consulted with, and relied upon, the expertise of his business accountant in formulating Defendants' reasonable good faith belief that Timberline was exempt from FLSA overtime requirements. Mr. Payne testified at his deposition as follows:

> **Q.    Okay. So what did you talk about with Mr. Rooyakker regarding the hourly rate employees?**
> A.    Whether it was legal or not to not pay overtime.
> **Q.    For the hourly employees.**
> A.    For the hourly employees. I'm sure we discussed the other employees now that I think about it. I'm sure we did over our compensation rates. I just don't remember when or how far back that was.
> **Q.    Okay. When did you speak to him with regard to the hourly people?**
> A.    Awhile back.
> **Q.    Like before the investigation?**
> A.    Oh, yes. On a couple different occasions.
> **Q.    So on page eight of GX 10 when you said that, "Defendants further state that Defendant Jim Payne was involved in decision concerning Timberline's compensation policies and practices in consultation with**

22

**Timberline's accountant" you're talking about overtime, right?**

A.  Yes.

**Q.  Okay.  Did he develop your payroll practices?**

A.  What do you mean by develop?

**Q.  Did he suggest you should do hourly rates for some, daily rates for others?**

A.  No.

**Q.  So were those practices already in place before you spoke to Mr. Rooyakker?**

A.  No, I don't believe so.

**Q.  Go ahead.**

A.  I'm sure I talked to him first.

**Q.  When?**

A.  I don't know what year.  It was prior to setting this company up.

**Q.  How do you know that?**

A.  What do you mean how do I know that?

**Q.  How do you know it was before setting up Timberline South?**

A.  Because that's when it started.

**Q.  So what did Mr. Rooyakker say to you in your consultation with setting up your compensation policies?**

A.  Well, he outlined what you can do and what you can't do. He had what was exempt and what was not exempt.  And he said we were exempt under agriculture.

Payne Dep., at 164-65 (**DX 11**).

Timberline's accountant, Matthew Rooyakker, verified that he advised Defendant Payne

that Defendant Timberline's activities were exempt from overtime under federal law:

**Q.  Did you ever state or insinuate to defendants that the FLSA did not apply to them because their business was governed solely by state law irrespective of any exemptions?**

A.  We -- I believe in response to their inquiry regarding Tennessee and the comments of overtime in Tennessee, I believe we did research and responded that we thought they were exempt from the overtime rules, laws.  Whether or not that's -- you deem that to be exempt from federal law only applicable to state law, that was the response we provided.

**Q.  Okay.  So, you did make a -- you did indicate that with regard to Tennessee, you know, for the work they performed in Tennessee, they would be exempt --**

23

> **Timberline South would be exempt from -- at least some of its employees would be    exempt from the Fair Labor Standards Act because of the agricultural exemption found in that act?**
>
> A.   I cannot recall whether it was Timberline, Inc. or Timberline South.  We came to the conclusion that Tennessee followed federal law and that federal law contained an exemption for what they do.
>
> **Q.   Okay.  Did you ever opine as to whether -- to Timberline South or Timberline Logging's operation in the state of Michigan?**
>
> A.   No.  And if I could have ten seconds.
>
>      MR. RUTENBERG:  Let's go off the record.
>
>      (Brief recess was taken.)
>
> BY MR. RUTENBERG:
>
> **Q.   We're back on the record.  So, going back to the advice you gave with regard to Timberline Logging or Timberline South LLC, just so I'm clear, you indicated that -- did you indicate that the FLSA applied but they were exempt  under the agricultural exemption?**
>
> A.   I believe we looked, and I don't know if we referenced the FLSA, etcetera, I believe we said they were exempt from overtime or qualified for an agricultural exemption from the overtime rules.

Rooyakker Dep., at 42-43 (**DX 12**). Mr. Rooyakker further testified that:

> **Q.   Okay.  And just to be clear, you never opined to either of these entities or to Lorrie or to Jim Payne that Timberline's  business was governed solely by Michigan law; is that correct?**
>
> A.   Not that I recall, no.
>
> **Q.   Do you ever remember being asked that?**
>
> A.   No.  Again, I remember being asked the question does this apply, etcetera, that I've discussed before.  I remember Jim asking me in a meeting about something else saying hey, did you look at that overtime stuff and answering yes, we took a look and it appears that overtime doesn't apply.

Rooyakker Dep., at 44-45 (DX 12).

Even if Mr. Rooyakker's advice was incorrect, Defendants assert that it is objectively reasonable to rely upon an accountant with whom Defendants were consulting during the formation of Defendant Timberline. Mr. Payne set up Timberline's compensation structure with

the good faith belief that Timberline was not required to pay overtime. Instead, Timberline provided employee compensation for various categories which would otherwise be non-compensable in order to maintain a competitive compensation structure for its employees. These included pay for drive to work time, lunch, per diem rates, fuel, and company cellphones. As indicated above, this compensation structure was successful given that several employees earned over $90,000 per year during the period of the investigation, and most earned more than industry average.

Under these circumstances, even if the Court determines that some amount of overtime is due, it would be unjust and inequitable to impose liquidated damages. Defendants therefore request that if any assessment is imposed, that liquidated damages be denied pursuant to 29 U.S.C. § 260.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that Plaintiff's Complaint be dismissed with prejudice based on lack of subject matter jurisdiction, or in the alternative, that the Court grant Defendants' request to apply exemptions and calculation methods as stated herein, and decline to assess liquidated damages.

Dated:   April 20, 2017                                    Respectfully submitted,

/s/Jeffrey S. Theuer
Jeffrey S. Theuer (P44161)
Warren H, Krueger (P74115)
LOOMIS,   EWERT,   PARSLEY,
DAVIS & GOTTING, P.C.
124 West Allegan, Suite 700
Lansing, MI 48933
(517) 482-2400
jstheuer@loomislaw.com
Attorneys for Defendants

## CERTICATE OF SERVICE

I hereby certify that on April 20, 2017, I electronically filed the foregoing *Defendants'*

*Motion for Summary Judgment* and *Defendants' Brief in Support of Motion for Summary Judgment*

with exhibits with the Clerk of the Court using the ECF system, which will send notification and

true copies to said person below, and by addressing an envelope and by depositing the envelope in

the first-class mail, postage thereon fully prepaid, upon:

> David J. Rutenberg
> U.S. Department of Labor,
>  Office of the Solicitor
> 230 S. Dearborn Street, Room 844
> Chicago, IL  60604
> Rutenberg.David.J@US DOL.gov

> S/Jeffrey S. Theuer
> JEFFREY S. THEUER (P44161)
> LOOMIS, EWERT, PARSLEY,
> DAVIS & GOTTING, P.C.
> 124 West Allegan, Suite 700
> Lansing, MI 48933
> (517) 482-2400
> jstheuer@loomislaw.com