UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MARTIN J. WALSH, Secretary of Labor,

    Plaintiff,         Case No. 1:16-cv-11552

v.               Honorable Thomas L. Ludington
                United States District Judge
TIMBERLINE SOUTH, LLC and JIM PAYNE,

    Defendants.
_____/

**OPINION AND ORDER AFFIRMING SECRETARY'S DAMAGES RECALCULATION**

   After nearly seven years of litigation in this Fair Labor Standards Act case, the only remaining issues are how much time four equipment operators spent eating lunch and commuting to and from work while completely relieved of their work-related duties. That time must be excluded from calculation of monetary damages that Defendants must pay for past-due overtime.

   The Secretary of Labor previously calculated that Defendants owe the four operators a total of $104,431.86 for unpaid overtime. Then Defendants provided affidavits from the four operators that placed that number in doubt, triggering the Sixth Circuit to remand for recalculation. After considering the new affidavits and the rest of the record, the Secretary has reduced Defendants' liability to $59,602.74—a 43% discount. In response, Defendants argue they owe $18,440.57.

   The questions presented are whether the Secretary's new calculations are reasonable and if so whether Defendants have sufficiently rebutted them.

**I.**

   Formed as a Michigan LLC in 2010, Timberline South harvests timber from two to four jobsites at a time, exclusively in Michigan. *Walsh v. Timberline S., LLC*, No. 1:16-CV-11552, 2022 WL 17367185, at *1 (E.D. Mich. Nov. 28, 2022). Every workday, Timberline's equipment

operators must fill their trucks' hundred-gallon tanks on the way to work, from work, or both. *Id.* They commute from home or hotel, depending on the location of the jobsite, which changes every few weeks. *Id.* At the jobsites, the employees cut timber, load it onto trucks, and then transport it to mills in Michigan. *Id.* They get paid daily, hourly, by harvest amount, or some combination of those methods. *Id.* Jim Payne is Timberline's director and established its compensation and recordkeeping practices. *Id.*

In April 2016, the Secretary of Labor sued Timberline and Payne under the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 207, 2015(a)(2), alleging violations of overtime and recordkeeping requirements. ECF No. 1.

Two years ago, the Sixth Circuit affirmed this Court's grant of summary judgment favoring the Secretary but vacated the damages awards. *Sec'y of Lab. v. Timberline S., LLC* (*Timberline I*), 925 F.3d 838 (6th Cir. 2019). The Sixth Circuit reasoned that neither ordinary-commute time nor bona-fide mealtime[1] is "work" subject to the FLSA's overtime-compensation requirements, even for employers that have a custom or policy of paying for such time. *Id.* at 855. On remand, this Court was directed to determine the commute and meal time during which Defendants' employees were completely relieved of their duties and to exclude it from damages. *Id.* at 855 & n.12.

On remand, this Court held that more discovery was unlikely to uncover new evidence, given the Parties' investment in discovery, cross-motions for summary judgment, and two rounds of supplemental briefing on damages. *Perez v. Timberline S., LLC*, 453 F. Supp. 3d 1068, 1072–73 (E.D. Mich. 2020), *aff'd in part, rev'd in part, and remanded sub nom. Walsh v. Timberline S., LLC* (*Timberline II*), No. 20-1529, 2022 WL 705835 (6th Cir. Mar. 9, 2022). This Court also held

---

[1] To be "bona fide" mealtime, "[t]he employee must be completely relieved from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period." 29 C.F.R. § 785.19.

that Defendants failed to offer any evidence establishing the time that their employees were paid for ordinary-commute time and meal time. *Id.* at 1073–74. So summary judgment was granted against Defendants in the "amount of $439,437.62 for overtime wages, plus an equal amount in liquidated damages, for a total of $878,874.84": the same amounts as before. *Id.* at 1074.

Defendants appealed again, arguing (1) this Court "was required to reopen discovery or hold an evidentiary hearing on damages," (2) this Court "erred by including commute and meal time in the damages award," and (3) "each of the Secretary's calculations of overtime contained errors and inconsistencies." *Timberline II*, 2022 WL 705835, at *1.

The Sixth Circuit remanded the case based on two narrow "disputes of material fact":

(1) "damages as pertains to the seven weeks where Defendants noted that [seven] employee[s'] timecards reflected fewer overtime hours worked as compared to the payroll journals relied on by the Secretary" and
(2) "the number of hours of ordinary commute time and bona fide meal periods [that] were included in the payroll records" of five other employees.[2]

*Id.* at *8–9.

On remand, the Parties resolved the first issue through a stipulated order. ECF No. 90. With respect to the second issue, the Secretary no longer seeks backpay for Gary Payne, the brother of Defendant Jim Payne. ECF No. 87 at PageID.4662 n.1.[3]

Thus, the only remaining issues are how much time four equipment operators spent eating their lunch and commuting to and from work while "completely relieved of their duties," which

---

[2] The five employees are three hourly equipment operators (Dave Keyser, Dan Kitchen, and Mark Ogden) and two equipment operators who were paid on an hourly basis and then a nonhourly basis (William Axford and Gary Payne). *Timberline II*, No. 20-1529, 2022 WL 705835, at *6 (6th Cir. Mar. 9, 2022).

[3] Defendants also filed a motion to supplement the record, which "w[as] denied because it [wa]s procedurally improper, there [wa]s no pending appeal, the evidence [wa]s new, this Court has no equitable power to supplement a record, and Defendants ha[d] not sufficiently explained their delay in creating or submitting the new evidence." *Walsh v. Timberline S., LLC*, No. 1:16-CV-11552, 2022 WL 17367185, at *1 (E.D. Mich. Nov. 28, 2022).

"must be excluded from the amount of damages that Defendants must pay." *Walsh v. Timberline S., LLC*, No. 1:16-CV-11552, 2022 WL 17367185, at *3 (E.D. Mich. Nov. 28, 2022) (citing *Timberline II*, 2022 WL 705835, at *7). The only material evidence on the issues is the equipment operators' identical affidavits, which read that "[o]n most days[, they] drove about one hour to the jobsite, and one hour home, and took a half-hour lunch when [they] could fit it in. When [they] reported time, [they] included [their] drive time and lunch time in total hours." Axford Aff., ECF No. 41-12 at PageID.4167; Keyser Aff., ECF No. 41-12 at PageID.4169; Kitchen Aff., ECF No. 41-12 at PageID.4170; Ogden Aff., ECF No. 41-12 at PageID.4171.

To that end, the Parties submitted supplemental briefing. At this Court's direction, the Secretary considered the four employees' affidavits to recalculate damages, resulting in a reduction of Defendants' liability from $104,431.86 to $59,602.74. *See* ECF No. 87 at PageID.4666. By contrast, Defendants assert they should be liable for only $18,440.57. ECF No. 91 at PageID.4693.

Having reviewed the Parties' briefing, this Court finds that a hearing is unnecessary and will resolve the issues on the papers. *See* E.D. Mich. LR 7.1(f)(2).

## II.

### A.

A motion for summary judgment should be granted if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The movant has the initial burden of "identifying those portions of [the record] it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the opposing party who must set out specific facts showing "a genuine issue for trial." *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 250 (1986) (citation omitted). A genuine issue of fact requires more than "a mere scintilla of

evidence," *id.* at 251, more than "some metaphysical doubt," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The court must draw all reasonable inferences in favor of the nonmovant to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52; *see Lossia v. Flagstar Bancorp, Inc.*, 895 F.3d 423, 428 (6th Cir. 2018); *see also* Matthew N. Preston II, *The Tweet Test: Attributing Presidential Intent to Agency Action*, 10 BELMONT L. REV. 1, 35–36 (2022) (urging courts not to draw inferences that are "neither reasonable nor logical").

Summary judgment will be granted if the nonmovant fails to establish a genuine issue of material fact, *see Celotex Corp.*, 477 U.S. at 322, and denied if the challenged elements have "genuine factual issues that . . . may reasonably be resolved in favor of either party," *Hancock v. Dodson*, 958 F.2d 1367, 1374 (6th Cir. 1992) (citation omitted). "The standard is the same [if] 'the parties present cross-motions.'" *MRP Props. v. United States*, 583 F. Supp. 3d 981, 990 (E.D. Mich. 2021) (quoting *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991)).

## B.

In FLSA cases, if the employer kept inaccurate or inadequate records, then the plaintiff may satisfy a relaxed burden of proof by estimating damages with a just and reasonable inference. *See Timberline II*, No. 20-1529, 2022 WL 705835, at *5 (6th Cir. Mar. 9, 2022) (quoting *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 602 (6th Cir. 2009)); *Monroe v. FTS USA, LLC*, 860 F.3d 389, 398–99 (6th Cir. 2017) (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946)).

If the FLSA plaintiff provides a reasonable estimate of damages, then the burden "shifts to the employer to come forward with evidence of the precise amount of work performed or with

evidence to negative the reasonableness of the inference to be drawn from the [plaintiff]'s evidence." *Acosta v. Off Duty Police Servs.*, 915 F.3d 1050, 1064 (6th Cir. 2019) (quoting *U.S. Dep't of Lab. v. Cole Enters.*, 62 F.3d 775, 779 (6th Cir. 1995)).

"If the employer cannot negate the estimate," then "the court may award the reasonably inferred, though perhaps approximate, damages." *Timberline II*, 2022 WL 705835, at *5–6 (first quoting *O'Brien*, 575 F.3d at 602–03); and then quoting *Monroe*, 860 F.3d at 407)).

## III.

The only issues remaining are the calculations of four equipment operators' ordinary-commute time and bona-fide mealtime, which "must not be included in determining how many hours of overtime each employee worked." *Timberline I*, 925 F.3d 838, 855 (6th Cir. 2019) ("Defendants may not use the amounts paid for those otherwise non-compensable work periods as an offset against the amounts owed." (first citing *Ballaris v. Wacker Siltronic Corp.*, 370 F.3d 901, 913 (9th Cir. 2004); and then citing *Reich v. Lucas Enters.*, 2 F.3d 1151 (6th Cir. 1993))). Defendants submitted affidavits from the four equipment operators that the Secretary "did not attempt to account for" in his prior calculations, creating "a question of fact whether the Secretary's estimate [wa]s reasonable." *Timberline II*, 2022 WL 705835, at *6–7.

On remand, the Secretary accounted for the four equipment operators' affidavits and recalculated damages. This Court must first determine whether the calculations are reasonable: commute time, then mealtime. If so, then Defendants may rebut the calculations.

As explained below, Defendants owe $59,602.74 in unpaid overtime as follows: $28,758.88 to William Axford; $14,139.71 to Dan Kitchen; $8,755.00 to Mark Ogden; and $7,949.15 to Dave Keyser.

## A.

As to commuting, Defendants *are not liable* for the equipment operators' ordinary-commute time. 29 C.F.R. § 785.34 (2011); *Timberline I*, 925 F.3d at 855. The operators' ordinary-commute time is the time that they spent traveling (1) from their home to the place of their principal activity and (2) from the place of their principal activity to their home. *See* 29 U.S.C. § 254(a) (2011); 29 C.F.R. § 785.35 (2011).

By contrast, Defendants *are liable* for the operators' working-commute time: travel time that "occur[s] between two principal activities; that is, 'after the workday begins and before it ends.'" *In re Amazon.com, Inc., Fulfillment Ctr. FLSA & Wage & Hour Litig.*, 852 F.3d 601, 614 (6th Cir. 2017) (citations omitted).

## 1.

Here, the operators' working-commute time includes the time they spent driving from a fuel station to their jobsite and vice versa. *See* 29 C.F.R. § 785.38 (2011) (counting "as hours worked" time spent commuting "to the work place" from "a meeting place" where the "employee is required to report . . . to receive instructions or to perform other work there, or to pick up and to carry tools"); *Timberline II*, 2022 WL 705835, at *7 (holding that commute time is not "ordinary" if the employees were not "completely relieved of their duties during the commute").

The daily meeting place for operators was a fuel station. Defendants testified that they "designated fuel station[s]" where they required the operators to get "fuel for the machines" before "go[ing] to their jobsite." ECF No. 25-4 at PageID.2673–74. Defendants also testified that the operators must "get fuel at least once a day," sometimes "twice in one day," which "[i]s usually over a half hour process in itself." *Id.* at PageID.2702. Defendants added that the operators included all that time on their timecards as "part of the compensation package," *id.* at PageID.2684,

which Defendants counted as "hours worked," *id.*, specifically "for overtime" purposes, *id.* at PageID.2690. Defendants also paid for the operators' personal gasoline without limit to make the fueling trips, *id.* at PageID.2678–79, because fueling was a duty that the operators "had to do," *id.* at PageID.2691; *see also id.* at PageID.2684 ("[T]hey wouldn't even work unless you pay them to go get to your job sites.").

In this way, "fueling the trucks" was "integral and indispensable" to the operators' duties, meaning Defendants were required to pay overtime for it. *Herman v. Hector I. Nieves Transp.*, 91 F. Supp.2d 435, 448 (D.P.R. Feb. 15, 2000) (first citing *Barrentine v. Ark.-Best Freight Sys.*, 750 F.2d 47, 51 (8th Cir. 1984); and then citing *Mitchell v. Mitchell Truck Line, Inc.*, 286 F.2d 721, 725 (5th Cir. 1961))); *see Forrester v. Am. Sec. & Prot. Serv.*, No. 21-5870, 2022 WL 1514905, at \*7 (6th Cir. May 13, 2022) (White, J., concurring in part and dissenting in part) ("The relevant question is whether the activity is 'integral and indispensable to the principal activities' the employee is employed to perform." (quoting *Integrity Staffing Sols. v. Busk*, 574 U.S. 27, 33 (2014))); *see also* 29 C.F.R. § 790.8(b)(1) (2011) ("In connection with the operation of a lathe an employee will frequently at the commencement of his workday oil, grease or clean his machine, or install a new cutting tool. Such activities are an integral part of the principal activity, and are included within such term.").

Being "integral and indispensable," fueling the trucks was a "principal activity" for equipment operators. *IBP, Inc. v. Alvarez*, 546 U.S. 21, 37 (2005) ("[W]e hold that any activity that is 'integral and indispensable' to a 'principal activity' is itself a 'principal activity' under § 4(a) of the Portal-to-Portal Act.").

Therefore, all the time that the operators spent traveling from a fuel station to a jobsite and vice versa is working-commute time, meaning Defendants were required to pay overtime for it. 29

C.F.R. § 785.38 (2011); *IBP*, 546 U.S. at 37 ("[D]uring a continuous workday, any [travel] time that occurs after the beginning of the employee's first principal activity and before the end of the employee's last principal activity is . . . is covered by the FLSA."); *see also* 29 C.F.R. § 790.7(e) (2011); *Timberline II*, 2022 WL 705835, at *7; *In re Amazon.com*, 852 F.3d at 614.

## 2.

Even if fueling the trucks was not a principal activity—and it was—Defendants would be liable for the operators' roundtrip commute time minus any "ordinary travel" based on their custom and practice to count it as "working time" for overtime purposes. 29 C.F.R. § 785.34 (2011). To compensate the equipment operators' fueling and working-commute time, Defendants testified that they counted "two hours" of "hours worked" specifically  "for overtime" purposes, regardless of the actual time that it took. *See* ECF No. 25-4 at PageID.2683–84, 2690. Two hours, they added, gave the operators enough time "to go to the fuel station, get whatever [they] need, and go to the job and start [their] work." *Id.* at PageID. 2697–99; *id.* at PageID.2672 (testifying that equipment operators also had to stop at the shop to pick up oil or hoses for the jobsites). They also testified that they "can *guarantee* you it's an hour at least every morning and night." *Id.* at PageID.2698 (emphasis added); *id.* at 2701–02 (testifying that filling the "hundred gallon tank" was "usually over a half hour process in itself"). The four operators at issue averred to the same two hours being counted as hours worked. *See* ECF No. 41-12 at PageID.4167 ("On most days I drove about one hour to the jobsite, and one hour home, and took a half-hour lunch when I could fit it in. When I reported time, I included my drive time and lunch time in total hours."); *accord id.* at PageID.4169–71. True, they also averred that they "did not have an *agreement or understanding* that this time would be included in any calculation of overtime." *Id.* at PageID.4167–71 (emphasis added). But that does not rebut Defendants' testimony that Timberline had a *custom or practice* to

count it as hours worked for overtime purposes and actually did so; the operators' understanding of that practice is irrelevant. *See* 29 C.F.R. § 785.34 (2011). And Defendants nevertheless testified that they had a "verbal agreement" with the operators to count it. ECF No. 25-4 at PageID.2684.

But there is no way to determine the exact number of the operators' ordinary-commute time because, as the Sixth Circuit held, the operators' affidavits "do not specify whether the[y] were completely relieved of their duties during the commute," and Defendants kept "inadequate records" of it. *Timberline II*, No. 20-1529, 2022 WL 705835, at *6–7 (6th Cir. Mar. 9, 2022).

So the Secretary counted one hour per workday for fueling and working-commute time. Defendants said that the operators had to spend at least 30 minutes per day fueling, one hour if they did it twice. ECF No. 25-4 at PageID.2702. Adding those 30 minutes to the rest of the operators' one-way trip, Defendants explained, totaled "anywhere from an hour . . . to two hours, . . . depending on how far away the job is." *Id.* at PageID.2683; *see also id.* at PageID.2698 ("It's roughly two hours."). And the four operators at issue averred to one hour of one-way *driving* time "[o]n most days." ECF No. 41-12 at PageID.4167–71. Without knowing precisely how far the fuel stations were from the operators' homes or jobsites, it is reasonable to infer the fuel stations were located at the halfway point of the commute. Thus, 30 minutes of driving counted as hours worked for overtime purposes each workday. And the affidavits do not mention fueling time. *Id.* So it was reasonable and logical for the Secretary to read the operators' affidavits as consistent with Defendants' testimony: estimating 30 minutes of fueling plus 30 minutes of driving from the fuel station to the jobsite. *See* ECF No. 87 at PageID.4665 ("[F]or purposes of reconstruction of non-compensable travel time in this matter, the Secretary has removed half the time spent 'commuting.'").

For those reasons, the Secretary's recalculation of ordinary-commute is reasonable.

**B.**

As to mealtime, Defendants are *not liable* for the equipment operators' bona-fide mealtime.

*Timberline I*, 925 F.3d 838, 854 (6th Cir. 2019) (first citing 29 C.F.R. § 785.19 (2011); and then

citing *Ruffin v. MotorCity Casino*, 775 F.3d 807, 811–15 (6th Cir. 2015)). The equipment

operators' bona-fide mealtime is the time that they spent eating while "completely relieved from

duty," which is "[o]rdinarily 30 minutes or more." *Timberline II*, 2022 WL 705835, at *3 n.1 (6th

Cir. Mar. 9, 2022) (quoting 29 C.F.R. § 785.19 (2011)).

By contrast, Defendants *are liable* for the equipment operators' on-duty mealtime: the time

during which the operators were "required to perform any duties, whether active or inactive, while

eating." 29 C.F.R. § 785.19 (2011); *accord Jordan v. IBP, Inc.*, 542 F. Supp. 2d 790, 814 (M.D.

Tenn. 2008) (quoting 29 C.F.R. § 785.19(a) (2011)).

**1.**

The Sixth Circuit applies "the predominant-benefit test" to "answer[] whether or not an

entire window of time is a 'bona fide meal period.'" *Abadeer v. Tyson Foods, Inc.*, 14 F. Supp. 3d

1062, 1070 (M.D. Tenn. 2014) (explaining that it produces "an all-or-or-nothing result").

Basically, the court must determine whether the time during which the employee ate was "spent

predominantly for the employer's benefit." *F.W. Stock & Sons v. Thompson*, 194 F.2d 493, 496–

97 (6th Cir. 1952) (citation omitted).

To that end, the Sixth Circuit has provided three exclusive factors:

(1) whether the employee is "engaged in the performance of any substantial duties"
during the mealtime;
(2) whether the employer's business regularly interrupts the employee's meal
period; and
(3) the employee's inability to leave the employer's property during meal breaks.

*Ruffin v. MotorCity Casino*, 775 F.3d 807, 811–15 (6th Cir. 2015); *accord Hill v. United States*,

751 F.2d 810, 814 (6th Cir. 1984) ("As long as the employee can pursue his or her mealtime adequately and comfortably, is not engaged in the performance of any substantial duties, and does not spend time predominantly for the employer's benefit, the employee is relieved of duty and is not entitled to compensation under the FLSA.").

**2.**

As the Sixth Circuit explained, "there is a genuine dispute of material fact" as to "whether the [four equipment operators] were completely relieved of their duties during the . . . meal times recorded in their time entries such that . . . the meal periods were 'bona fide.'" *Timberline II*, 2022 WL 705835, at *7 (internal citations omitted) (quoting 29 C.F.R. § 785.19(a) (2011)). Although "the [four operators'] affidavits are somewhat vague regarding the number of . . . meal hours included in the[ir] time records," *id.*; *see also* ECF No. 41-12 at PageID.4167–71, three other operators averred that they were never completely relieved of their duties during mealtimes, *see* ECF No. 18-16 at PageID.1716, 1723, 1729.

True, Defendants testified that the operators had complete discretion during mealtimes. *See* ECF No. 25-4 at PageID.2684 ("They don't write it on hey, I took a lunch break, even though you know they took one. It's not written on their timecard. It's all paid for. That's just all part of the compensation package."); *id.* at PageID.2685 (testifying that the operators reported mealtime on timecards based on "an honor system"). Even "the payroll person" did not "know that they actually do take lunch each day as opposed to working through lunch." ECF No. 25-3 at PageID.2669 ("I don't know other than they gotta eat."). And the four operators averred to eating lunch "[o]n most days . . . when [they] could fit it in." ECF No. 41-12 at PageID.4167–71.

But the operators' discretion to spend 30 minutes eating lunch how and when they wanted does not provide an answer of how they *actually* spent that time beyond any genuine dispute.

- 12 -

*Compare Myracle v. Gen. Elec. Co.*, 33 F.3d 55 (6th Cir. 1994) (per curiam) ("[I]n this case, the plaintiffs are not required to engage in any substantial duties during their meal breaks. Within flexible limits, plaintiffs are free to choose the time and place of their meal periods. Further, they are neither required nor allowed to perform their work duties during this time."), *with F.W. Stock & Sons v. Thompson*, 194 F.2d 493, 497 (6th Cir. 1952) (explaining that the FLSA could still include on-duty mealtime during which "the nature of the duty time hang[s] heavy on the employees' hands and . . . the employer and employee cooperated in trying to make the confinement and idleness incident to it more tolerable" (quoting *Armour & Co. v. Wantock*, 323 U.S. 126, 134 (1944))), *and Hartsell v. Dr. Pepper Bottling Co. of Tex.*, 207 F.3d 269, 274 (5th Cir. 2000) (counting lunch as predominantly for employer's benefit even though the employees "only took it here or there"). In sum, there remains a genuine question of fact as to whether the four equipment operators' mealtimes were *bona fide*.

The Secretary *could* have reasonably counted the four operators' total mealtime as hours worked for overtime purposes. To fill in the gap left by the affidavits of the four operators at issue, the Secretary relied on the averments of three other operators that "[m]ost of the time, [they] would eat lunch while working on [the truck] for Timberline" because they were "not relieved from duties" during that time. ECF No. 18-16 at PageID.1716; *accord id.* at PageID.1723 ("I generally ate in the cab of my truck . . . . because I could not actually halt work to take lunch relieved from duties."); *id.* at PageID.1729 ("I ate my lunch while I worked on my machine. . . . All of the guys on the site basically did the same thing and ate while working."); *see also* ECF No. 41-3 at PageID.4122. The Sixth Circuit held that such an "approach was reasonable considering the available data." *See Timberline II*, No. 20-1529, 2022 WL 705835, at *6 (6th Cir. Mar. 9, 2022) (citations omitted).

Yet the Secretary reasonably gave Defendants the benefit of the doubt. The four operators at issue averred to 30 minutes of mealtime on "*most days*." ECF No. 41-12 at PageID.4167–71 (emphasis added). None of the operators distinguished mealtimes on their timecards. ECF Nos. 18-16 at PageID.1716, 1723, 1729; 41-12 at PageID.4167–71 ("When I reported time, I included my . . . lunch time in total hours."). Nor did Defendants require the operators to do so. *See* ECF No. 25-4 at PageID. 2684, 2690 (testifying to Defendants' "verbal agreement" with employees to "record" all "lunch breaks" as "hours worked" on timecards "for overtime" purposes). Defendants even testified that they did not know the frequency or duration of the operators' bona-fide lunches. *Id.* at PageID.2684–85. Indeed, the Sixth Circuit held that Defendants kept "inadequate records" of the operators' bona-fide mealtime. *Timberline II*, 2022 WL 705835, at *6. Without knowing the precise number of workdays during which the operators took a bona-fide lunch, it was reasonable for the Secretary to infer a number consistent with the operators' affidavits and Defendants' testimony: estimating 30 minutes of bona-fide mealtime on half the operators' workdays. *See* ECF No. 87 at PageID.4666 ("[T]he Secretary has generously credited half the meal breaks as the number of times the affiants 'could fit it in' a meal period completely relieved from duty for at least 30 minutes."). Moreover, the Secretary credited *three* lunches per workweek as if the operators worked six days every workweek. *See id.* (discounting "the hours by 1.5 hours [of] meals (3 x .5 meal break)" per workweek). That altruistic accommodation makes the Secretary's calculation even more reasonable because the four operators at issue did not work six days every workweek. *E.g.*, Wkly. Timecards, ECF No. 25-8 at PageID.3221 (Dan Kitchen), 3242 (Dave Keyser), 3250 (Mark Ogden), 3255 (Bill Axford); *see also* Sec'y's Wage Computation Sheets, ECF No. 89 at PageID.4671–72 (Mark Ogden), 4673–76 (Dan Kitchen), 4677–80 (Dave Keyser), 4681–84 (William Axford); Defs.' Wage Computation Sheets, ECF No. 91-1 at PageID.4704–06

(Mark Ogden); 4709–13 (Dan Kitchen); 4714–18 (Dave Keyser); 4727–31 (William Axford).

For those reasons, the Secretary's recalculation of mealtime is more than reasonable.

### C.

Because the Secretary reasonably estimated the damages, the burden shifts to Defendants to "negate the estimate." *Timberline II*, 2022 WL 705835, at *5. To that end, Defendants must "come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Id.* (collecting cases).

The Sixth Circuit already held not only that Defendants' evidence was not precise enough to negate the reasonableness of the Secretary's calculations, but also that Defendants separately failed to do so. *Timberline II*, 2022 WL 705835, at *6–7 ("[T]he employee affidavits are somewhat vague regarding the number of commute or meal hours included in the[ir] time records.").

Thus, the remaining issue is reduced to Defendants' arguments that the Secretary's recalculations are not reasonable. Defendants have not provided any new evidence and instead "submit that the affidavits [of the four equipment operators] are controlling." ECF No. 91 at PageID.4689; *id.* at 4692–93 ("The 4 employee affidavits should be considered dispositive as to the number of hours and travel-to-work time which should be deducted from the government's calculation of back wages.").

But Defendants' arguments lack merit. Here, Defendants argue in a conclusory fashion that "Plaintiff's suggested re-calculation method is based on speculation and conjecture." ECF No. 91 at PageID.4693–94 ("Neither of these methodologies [is] supported by the record as to these specific employees, and both are inconsistent with the affidavits filed as of record." As explained at length above, the Secretaries' calculations were both well grounded in the record and based on

reasonable, logical inferences. *See* discussion *supra* Sections III.A.2, III.B.2.

For those reasons, the Secretary's new calculations will be affirmed. *Timberline II*, 2022 WL 705835, at *5 ("If the employer cannot negate the estimate, then the 'court may award damages to the employee, even though the result [is] only approximate.'" (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 688 (1946)).

### III.

Accordingly, it is **DECLARED** that, with respect to the remaining ordinary-commute time and bona-fide mealtime of the four equipment operators at issue (i.e., Dan Kitchen, Dave Keyser, Mark Ogden, and Bill Axford), Defendants are **LIABLE** for $59,602.74 in unpaid overtime and an equal amount in liquidated damages, totaling **$119,205.48**.

**This is a final order and closes the above-captioned case**.

Dated: February 24, 2023                    s/Thomas L. Ludington
                                             THOMAS L. LUDINGTON
                                             United States District Judge